IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-00187-RLV-DCK

| | |
|---|---|
| ERNESTINE HOUCK, EXECUTRIX OF THE ESTATE OF WALTER MARK HOUCK,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON PHIL HOWELL AND JOSHUA HOPKINS,<br><br>Defendants. | ORDER |

**THIS MATTER IS BEFORE THE COURT** on Defendant Brandon P. Howell's Motion to Dismiss (Doc. No. 35) and Defendant Joshua Hopkins' Motion to Dismiss (Partial) (Doc. No. 38). Having been fully briefed and considered, the Defendants' motions are now ripe for disposition. For the reasons discussed more fully below, Defendant Howell's Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**, and Defendant Hopkins' partial Motion is **GRANTED**.

I.     BACKGROUND

Walter Mark Houck (hereinafter, the "Decedent") lived in Ashe County, North Carolina on a fairly large piece of property with his wife, Ernestine Houck (hereinafter, the "Plaintiff" or "Mrs. Houck").[1] [Doc. No. 34] at ¶¶ 5, 19. The Decedent suffered from certain medical conditions, which rendered him nearly blind and deaf. He could not see in the dark, had an extreme case of "tunnel vision," was deaf in one ear, and required the use of a hearing aid. *Id.* at ¶¶ 8, 10, 14.

---

[1] Mrs. Houck has brought this action in her capacity as the executrix of the Decedent's estate. *See* [Doc. No. 34] at p. 1 (¶1).

Despite his condition, the Decedent was capable of performing simple tasks, such as spotting written words, watching television, or moving around in familiar spaces (such as his home) without much help; however, if he ventured into unfamiliar territory, he required the guidance of another person. *See* [Doc. No. 34] at ¶¶ 11-13.

Because of his disabilities, the Decedent was unable to work. *Id.* at ¶ 9. His wife, the Plaintiff, in her representative capacity, maintained the household by working two jobs. During the day, Mrs. Houck worked in the cafeteria of a Tyson's poultry plant and, at night, she worked in the processing unit of the same plant. [Doc. No. 34] at ¶ 19. As a result of Mrs. Houck's schedule, the Decedent was frequently left alone at night. *Id.* at ¶ 20. While home alone, the Decedent would fire one of his two guns (either a shotgun or a rifle) on a regular basis. He exploited the gun's disquieting blast to frighten away animals whenever he let his dog out of the house. [Doc. No. 34] at ¶¶ 17-18.

On November 19, 2012, Decedent was home alone, had consumed alcohol, and was upset. [Doc. No. 34] at ¶ 21. At approximately 10:50 p.m., he discharged a shotgun twice from his front porch. *Id.* at ¶ 22. Defendant Howell, a detective with the Ashe County Sheriff's Office, heard these shots from his home, approximately 200 yards away from the Decedent. *Id.* at ¶¶ 5, 22-23. At approximately 11:00 p.m., Defendant Howell witnessed the Decedent discharge his shotgun four more times. *Id.* at ¶ 25. Thereafter, Defendant Howell telephoned the Ashe County dispatcher to report the Decedent's behavior. *Id.* at ¶ 26. He reported that the Decedent appeared to be discharging a weapon while intoxicated and requested that deputies respond in order to "check on" the Decedent. *Id.* at ¶ 26. Defendant Howell also requested that the authorities exercise caution while approaching the Decedent's residence. *Id.*

Defendant Deputy Hopkins, a deputy with the Ashe County Sheriff's Office, Officer Jake

Howell (no relation to Defendant Detective Howell), an officer with the West Jefferson Police Department, and Deputy Jeremy Munday responded to Defendant Howell's complaint. *See id.* at ¶¶ 3, 27-28. Before the responding officers arrived, Defendant Howell again contacted the Ashe County dispatcher to report that the Decedent had discharged his weapon three more times. [Doc. No. 34] at ¶ 29. He reported to dispatch that he would meet law enforcement at the Decedent's home, and recommended that the responding officers approach the home "stealthily, without any sirens or flashing dome lights." *Id.* at ¶¶ 29-30. Before leaving his residence to join with the responding officers, Defendant Howell donned tactical gear and warned the Decedent's neighbors to stay inside their homes. *Id.* at ¶¶ 36-37.

Defendant Hopkins and Officer Jake Howell arrived at the Decedent's home before the others. It was dark and the Decedent was inside the residence when they arrived. Rather than immediately approach the home, the officers chose to wait and watch the house from a distance of approximately thirty-five yards. [Doc. No. 34] at ¶¶ 39-42. After a brief time, the Decedent emerged from his home with his dog – unaware of the officers' presence and carrying a loaded, single-shot, bolt-action rifle in a non-threatening position ("muzzle up"). *Id.* at ¶¶ 43-45. Defendant Hopkins ordered the Decedent to drop his rifle. *Id.* at ¶ 49. When the Decedent did not comply with the order, Defendant Deputy Hopkins and Officer Jake Howell shot him. [Doc. No. 34] at ¶ 53. Deputy Munday arrived just as the gunfire began and "joined in the gunfire" with his fellow officers. *Id.* at ¶¶ 55-56. The Decedent died after he was shot nine times. *Id.* at ¶¶ 59-60. Defendant Howell arrived on the scene after the fatal encounter. *See id.* at ¶ 63.

## II. ISSUES PRESENTED

Plaintiff filed this lawsuit on November 18, 2014. In her Second Amended Complaint, the Plaintiff alleges that Defendants Howell and Hopkins violated the Decedent's Fourth Amendment right to be free from unreasonable seizures.[2] Plaintiff also alleges two state law causes of action – a claim for wrongful death and a claim for obstruction of justice. Defendants have each filed motions to dismiss the Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] Defendant Howell has challenged the entirety of the Plaintiff's federal and state law claims against him. [Doc. No. 36]. Defendant Hopkins has challenged only the Plaintiff's state law obstruction of justice claim. [Doc. No. 38]. The Court will address each of these challenges in turn.

## III. DISCUSSION

### A. Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss, this Court must examine the legal sufficiency of the complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual

---

[2] Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983. Plaintiff's claims are brought against the Defendants in their individual capacities only.

[3] Though Defendant Howell's Motion purports to have been brought under Rule 12(b)(2) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim), a detailed review of Defendant's brief does not locate any substantive argument based on a lack of personal jurisdiction. Rather, Defendant merely asserts that "if he is entitled to public officials immunity, then Plaintiff cannot assert personal jurisdiction over him[.]" [Doc. No. 36] at p. 18. Defendant cites no authority in support of this statement and does not elaborate on this argument. *Id.* Accordingly, the Court will not address this issue and will consider the defense of lack of personal jurisdiction abandoned.

allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting Twombly, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed. App'x 820, 827 (4th Cir. 2010); *see also Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

    B.    <u>Plaintiff's Claims Against Defendant Howell</u>

        1.    *Federal Claim – Deprivation of Constitutional Right to be Free from Unreasonable Seizures Asserted Pursuant to 42 U.S.C. § 1983*

Plaintiff alleges that Defendant Howell is liable to the Decedent's estate for depriving the Decedent of his constitutional right to be free from unreasonable seizures. Plaintiff asserts this claim pursuant to 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; instead, substantive rights must come from either the Constitution or federal statute. *See Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir. 1989) ("Section 1983 does not provide a remedy if federal law does not create enforceable rights."); *see also Sawyer v. Asbury*, 537 Fed. App'x 283, 290 (4th Cir. 2013) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). To state a claim upon which relief can be granted under Section 1983, a plaintiff must allege: (i) the deprivation of a federal right; (ii) that a person, both factually and legally, caused the deprivation of that right; and (iii) that the person who deprived the plaintiff of that right was acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *accord* M. SCHWARTZ, SEC. 1983 LITIG. CLAIMS & DEFENSES, § 1.04.

Defendant Howell moves to dismiss the Plaintiff's Section 1983 claim on qualified immunity and proximate causation grounds.[4] For the reasons that follow, the Court resolves this claim on the issue of qualified immunity and, therefore, does not reach the issue of proximate causation as it relates to the Section 1983 claim.

---

[4] The Court notes that Defendant Howell has also advanced a number of other arguments; however, Defendant's other contentions are inappropriate for resolution at this stage of the litigation. Consequently, the Court has summarily determined that such arguments are without merit for purposes of this order and will not address them at length here.

i. QUALIFIED IMMUNITY

"Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). Because the doctrine seeks to protect government officials from the burdens of trial and preparing for trial, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). "Unless the plaintiff's allegations state a claim [for the] violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Determining whether a case should be dismissed on qualified immunity grounds requires three inquiries: "First, [a court] must decide whether a constitutional right would have been violated on the facts alleged." *Cloaninger*, 555 F.3d at 330 (internal quotations and citations omitted). Next, a court must "ask whether the right was clearly established . . . in light of the specific context of the case." *See Scott v. Harris*, 550 U.S. 372, 377 (2007). Lastly, the Fourth Circuit has held that the third-step in the qualified immunity analysis requires a court to determine whether "a reasonable person in the officer's position would have known that his or her actions violated that right." *See Gould v. Davis*, 165 F.3d 265, 269–73 (4th Cir. 1998). This prong of the analysis basically asks whether prior precedent provided an officer with "fair notice" or "fair warning" that his or her actions would violate the constitutional rights of the harmed party. *See, e.g.*, *City & Cty. of San Francisco, Calif. v. Sheehan*, ___ U.S. ___, ___, 135 S. Ct. 1765, 1777, 191 L. Ed. 2d 856 (2015); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *M.C. ex rel. Crawford v. Amrhein*, 598 Fed. App'x 143, 147 (4th Cir. 2015) (acknowledging that an official can be held liable "'even in novel factual circumstances' so long as [the] official[] had 'fair notice' that [his or

her] conduct violated a constitutional right.").

Here, the Court need only proceed to the third prong of the analysis to resolve the Plaintiff's Section 1983 claim against Defendant Howell. In addressing the third prong of the qualified immunity analysis, the Court must assess whether Defendant Howell had "fair notice" or "fair warning" that his actions would result in Defendant Deputy Hopkins' alleged use of excessive force against the Decedent. *See Sheehan*, 135 S. Ct. at 1777; *Hope*, 536 U.S. at 739; *Amrhein*, 598 Fed. App'x at 147.

Defendant Howell argues that, at the time of the Decedent's death, it was not clear based on prior precedent that his specific actions, which he claims consisted of merely calling 911 and omitting his knowledge of the Decedent's medical infirmities, would result in the violation of the Decedent's constitutional rights. *See* [Doc. No. 36] at p. 13. While Defendant Howell's argument ignores the additional allegations, taken as true and in the light most favorable to Plaintiff, that he also falsely informed Defendant Hopkins, *inter alia*, that the Decedent was acting in a dangerous manner, was shooting at Defendant Howell's home, and had threatened to kill any police officers who dared to venture onto the Decedent's property; even assuming those allegations in Plaintiff's favor, the Court does not find that any Supreme Court or Fourth Circuit precedent placed Defendant Howell on "fair notice" that his false statements and omissions would result in the unreasonable seizure allegedly suffered by the Decedent.[5]

In reaching this conclusion, the Court has considered the Supreme Court case *Franks v.*

---

[5] As an aside, Defendant Howell's argument misunderstands the constitutional right at issue. In his brief, Defendant argues that qualified immunity is appropriately due to him because the Decedent did not have a constitutional right "to be free from any police intervention while he repeatedly discharged a shotgun in the dark of night, in a neighborhood where others, including [Detective] Howell, resided close by, while Decedent was upset and drinking alcohol." *See* [Doc. No. 36] at pp. 8, 12-13. This argument incorrectly construes the constitutional right alleged by the Second Amended Complaint. Plaintiff does not claim that the Decedent was exercising a constitutional right to "discharge a [weapon]" while "upset and drinking alcohol;" rather, Plaintiff claims that the Decedent was entitled to be free from a seizure by state actors effected by the use of excessive force – excessive force which, ultimately, resulted in the Decedent's death.

*Delaware*, 438 U.S. 154 (1978), and its progeny, on which the parties have based their arguments. In *Franks*, the Supreme Court recognized that an officer contravenes the Fourth Amendment when he procures a search warrant through the use of false statements, whereby a magistrate would not have otherwise found probable cause. *See Franks*, 438 U.S. at 155-56. In the case of *Miller v. Prince George's Cnty,* 475 F.3d 621 (4th Cir. 2007), the Fourth Circuit extended *Franks* to Section 1983 claims, and held that if an officer "deliberately or with a 'reckless disregard for the truth' ma[kes] material[ly] false statements in his affidavit [in support of a warrant] . . . or omit[s] from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading,'" then an arrest based on the warrant is unreasonable under the Fourth Amendment. *See Miller*, 475 F .3d at 627 (citation omitted).

Plaintiff asserts that *Franks* "covers the liability for an officer's deliberate, material misrepresentations" and that, somehow, *Franks* "combines" with the "collective knowledge doctrine" described in *United States v. Massenburg*, 654 F.3d 480 (4th Cir. 2011), to make Defendant Howell liable for the Decedent's death, based on the knowledge allegedly imputed to Defendant Hopkins and based on Defendant Hopkins' individual actions. [Doc. No. 40] at pp. 11. The Court is unconvinced by this argument. First, *Franks* and *Miller* concern circumstances where a *warrant* was procured from a magistrate based upon materially false or misleading information, and the execution of that warrant resulted in the violation of a complainant's constitutional rights. *See Franks*, 438 U.S. at 155-56; *Miller*, 475 F .3d at 624-33. Here, Defendant Howell did not apply for a warrant and did not seek to establish probable cause for the Decedent's arrest through his false statements. Instead, Defendant Howell merely requested that officers proceed to the Decedent's home to "check on" him. Assuming that the additional statements were made by Defendant Howell to Defendant Hopkins does not change the analysis. Accordingly, *Franks* and

*Miller* are distinguishable. Further, Plaintiff has not cited the Court to any cases from the Fourth Circuit or the Supreme Court, and the Court has found none, that clearly establish that the specific actions taken by Defendant Howell violate the Fourth Amendment.

Additionally, Plaintiff's reliance on *Massenburg* is both perplexing and unconvincing. The "collective knowledge doctrine" recognized in *Massenburg* "simply directs [a court] to substitute the knowledge of the instructing officer or officers for the knowledge of the acting officer[.]" *United States v. Patiutka*, 804 F.3d 684, 691 (4th Cir. 2015). The doctrine does not (and has not been held to) impute *liability* to an instructing officer for the acts of an alleged subordinate officer. *See Mattox v. City of Beaufort*, 2015 WL 4488036, at *10 n.15 (D.S.C. July 22, 2015) ("There is no case law in the Fourth Circuit [applying] [*Massenburg*] to impute liability in a civil lawsuit."). Here, Plaintiff appears to be arguing that *Massenburg* directs an imputation of liability to Defendant Howell for Defendant Deputy Hopkins' actions. This is inappropriate because *Massenburg* does not extend that far. Additionally, extending *Massenburg* that far would require this Court to repudiate a basic tenet of Section 1983 litigation – the rule that vicarious liability is inapplicable in the constitutional tort context. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each . . . defendant, through the official's own individual actions, has violated the Constitution."). Whether combined with *Franks* and *Miller* or not, it was not "clearly established" that *Massenburg* worked to impute such liability to Defendant Howell[6] at the time of the Decedent's death.[7]

Accordingly, Plaintiff has failed to demonstrate that, at the time he acted, Defendant Howell was on "fair notice" or had "fair warning" that his actions would violate the Decedent's

---

[6] Plaintiff has not alleged that Defendant Hopkins was subordinate to Defendant Howell.
[7] Because Defendant Howell is entitled to qualified immunity on these legal grounds, the Plaintiff's request to postpone the qualified immunity determination until she has an opportunity to further develop the record through discovery is denied.

constitutional right to be free from an unreasonable seizure. Therefore, Defendant's Motion to Dismiss the Plaintiff's Section 1983 claim against him is **GRANTED** on qualified immunity grounds.

    2.    *State Law Claim – Wrongful Death Asserted Pursuant to N.C.G.S. § 28A-18-2*

Plaintiff also contends that Defendant Howell is liable based on the state law tort of wrongful death. Defendant Howell contests Plaintiff's claim on the grounds of state law "public official" immunity and on proximate cause grounds.[8]

    i.    STATE LAW IMMUNITY

The Court first addresses Defendant Howell's state law immunity argument. Under North Carolina law, public official immunity is "a derivative form" of governmental immunity, *Epps v. Duke Univ.*, 468 S.E.2d 846, 850, 122 N.C. App. 198, 203 (N.C. Ct. App. 1996), which precludes suits against public officials in their individual capacities as follows:

> As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.

*Smith v. State*, 222 S.E.2d 412, 430, 289 N.C. 303, 331 (N.C. 1976). Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of his or her official authority, (2) done with malice, or (3) corrupt. *Id.* Moreover, North Carolina recognizes the doctrine of "constructive" intent, which allows the inference of "malice" and an "intent to injure" where an actor's conduct is "so reckless or so manifestly indifferent to the consequences" of his or her actions so as to "justify a finding of [willfulness] and wantonness equivalent in spirit to an actual intent." *Foster v. Hyman*, 148 S.E. 36, 38, 197 N.C. 189, 192 (N.C. 1929).

---

[8] Again, Defendant Howell advances several other arguments that are factual in nature and are inappropriate for consideration or resolution at this stage of the litigation. As above, the Court will not discuss those arguments at this juncture.

Defendant argues that he is entitled to state law immunity because Plaintiff has done nothing more than make "bare-bones" allegations of either "implied malice" or that his false statements and omissions were outside the "scope of his authority." [Doc. No. 36] at pp. 17-18. Defendant argues that, at most, Plaintiff has alleged only negligence, and negligence itself is insufficient to overcome public official immunity. *See id.* (citing *Wilcox v. City of Asheville*, 730 S.E.2d 226, 222 N.C. App. 285 (N.C. Ct. App. 2012) and *Slade v. Vernon*, 429 S.E.2d. 744, 110 N.C. App. 422 (N.C. Ct. App. 1993)). Plaintiff argues that she has sufficiently alleged "implied malice" and that the Second Amended Complaint supports the inference that Defendant Howell "lied to [Defendant] Hopkins about Decedent's conduct and motives to portray him as a dangerous menace who would kill the police if provoked," and that these "lies" "gave false information about [the Decedent's] actions and state of mind . . . [so as to] provo[k]e and create[] such a risk of Decedent's injury and death . . . to amount to constructive intent to injure." [Doc. No. 40] at pp. 14-16.

Here, as will be discussed below, the Court has determined that Defendant Howell's alleged false statements concerning the Decedent's dangerousness, which allegedly provoked the contextual circumstances leading to the Decedent's death, are sufficient, at this juncture, to support the Plaintiff's allegation of "implied malice" and "willful and wanton disregard." *See* Section III.B.2.ii., *infra*. Therefore the Court will not dismiss Plaintiff's wrongful death claim on state law immunity grounds at this time. However, Defendant Howell is free to raise the issue of state law immunity at a later date.

ii.   PROXIMATE CAUSE

The Court next addresses Defendant's proximate cause argument.[9] Under North Carolina law, an action for wrongful death is governed by statute. *See* N.C.G.S. § 28A-18-2 (the "Wrongful Death Statute"). To bring an action under the Wrongful Death Statute, "a plaintiff must allege a wrongful act, causation, and damages." *Bailey v. Gitt*, 518 S.E.2d 794, 795, 135 N.C. App. 119, 120 (N.C. Ct. App. 1999). The question of "causation" necessarily encompasses the legal and common law understanding of "proximate" causation. *See*, *e.g.*, *Harris v. Wright*, 151 S.E.2d 563, 566, 268 N.C. 654, 658 (N.C. 1966); *Reeves v. Staley*, 18 S.E.2d 239, 245, 220 N.C. 573, 582 (N.C. 1942); *Draughon v. Harnett Cty. Bd. of Educ.*, 582 S.E.2d 343, 345, 158 N.C. App. 705, 708 (N.C. Ct. App. 2003) *aff'd*, 591 S.E.2d 520, 358 N.C. 137 (N.C. 2004). Indeed, in an action for wrongful death, North Carolina courts hold that "[a]n essential element of causation is foreseeability, [i.e.,] that which a person of ordinary prudence would reasonably have foreseen as the probable consequence of his acts. A person is not required to foresee all results but only those consequences which are reasonable." *See Bogle v. Duke Power Co.*, 219 S.E.2d 308, 310, 27 N.C. App. 318, 321 (N.C. Ct. App. 1975).

Plaintiff alleges that Defendant Howell had known the Decedent for most of Defendant Howell's life, and that Defendant Howell knew the Decedent was legally blind and deaf on the night of the fatal exchange. *See* [Doc. No. 34] at ¶¶ 6-7. Defendant Howell did not disclose these facts to dispatchers or to the responding officers when he reported the Decedent's conduct. *Id.* at ¶¶ 31-32, 73. Plaintiff also alleges, however, that Defendant Howell made certain other statements, namely that he falsely told Defendant Hopkins that the Decedent had shot a gun in the direction of his home, that Defendant Howell felt threatened by Decedent, that multiple neighbors had called

---

[9] The parties' arguments concerning proximate causation on the wrongful death claim are substantially incorporated from their arguments respecting the Section 1983 claim.

him to complain about the Decedent's behavior that night, that the Decedent had threatened to kill the police if they ever came to his residence, and that the Decedent listened to the police scanner.[10] [Doc. No. 34] at ¶¶ 34-35, 78. On these facts, Plaintiff argues that Defendant Howell's omissions and untrue representations proximately caused the Decedent to be shot and killed by Defendant Deputy Hopkins, Officer Jake Howell, and Deputy Munday.

Defendant Howell challenges the Plaintiff's causation theory. He argues that he cannot be held liable for the Decedent's death because his actions, viewed separately and independently, but in context, were not the proximate cause of the Decedent's injury. In essence, Defendant Howell argues that, even if he failed to disclose the facts alleged by Plaintiff, and even if he made the alleged false statements prior to the deadly encounter, Defendant Deputy Hopkins' actions constituted an intervening and superseding cause of the Decedent's death, thereby breaking the causal chain between Defendant Howell's actions and the shooting. At this juncture, the Court disagrees with Defendant Howell's argument.

After Defendant Howell made the call to report Decedent to the authorities, Defendant went on to direct a method by which the responding officers might approach and confront the Decedent. Defendant Howell, however, allegedly omitted and falsified critical facts respecting the Decedent's dangerous propensities and his inability to utilize his senses of eyesight and hearing to distinguish between friendly law enforcement and hostile intruders. Defendant Deputy Hopkins and the others are alleged to have followed Defendant Howell's suggestions.

Based on the complaint's allegations, the Court must conclude that Plaintiff has plausibly alleged that Defendant Howell's alleged falsified statements and omissions acted to "prime" and

---

[10] Though there is dispute over whether Defendant Howell made these statements before or after the shooting, the Court must construe the facts in the light most favorable to the Plaintiff at this stage of the litigation. Therefore, the Court considers Defendant Howell to have made these statements to Defendant Hopkins prior to the shooting.

catalyze the subsequent encounter between the Decedent and responding officers, thus establishing the context in which a deadly encounter could occur between (1) a man incapable of distinguishing between law enforcement and those that might do him harm, and (2) law enforcement officers "primed" to anticipate a confrontation with a dangerous, erratic, and armed individual, who had previously threatened to kill any police officer daring enough to step onto his property. Under these facts, the Court cannot say, at this time, that Defendant Howell (a detective with the Ashe County Sheriff's Department) could not "foresee" that a deadly encounter would result from his false and material misrepresentations.[11] This analysis is bolstered by the Fourth Circuit's recent decision in *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). *See Tobey*, 706 F.3d at 386 (holding that "[i]t is an undoubtedly natural consequence of reporting a person to the police that the person will be arrested").[12]

Consequently, based on the complaint's allegations and the reasoning above, the Court finds that Defendant Howell's conduct is not so far removed from the Decedent's death as to require the dismissal of the Plaintiff's wrongful death claim at this time.

C. Plaintiff's State Law Claims Against Defendants Howell and Hopkins – Obstruction of Justice

Plaintiff has also brought state law claims of obstruction of justice against Defendants Howell and Hopkins arising from their actions during the investigation of the Decedent's death. In North Carolina, there exists a common law claim for "obstruction of justice," which is used to deter and remedy "any act which prevents, obstructs, impedes or hinders public or legal justice."

---

[11] To be clear, this analysis is materially different than that applied in the qualified immunity analysis. There, the Court is concerned with whether applicable *precedent* gave Defendant Howell "fair notice" that his actions would result in the deprivation of a clearly established constitutional right. Here, the Court is concerned with whether, as a matter of law, Defendant Howell could reasonably anticipate the actual harm that flowed from his actions. These are legally distinct and separate inquiries.

[12] The Court notes that *Tobey* was decided in 2013 and the facts of this case occurred in 2012. Accordingly, *Tobey* has no relevance to the Court's qualified immunity analysis in Section III.B.1.i., *supra*.

*Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 30, 161 N.C. App. 20 (N.C. Ct. App. 2003) (internal citations omitted). "The common law offense of obstructing public justice may take a variety of forms," *Blackburn v. Carbone*, 703 S.E.2d 788, 795, 208 N.C. App. 519, 526 (N.C. Ct. App. 2010), and is therefore very fact-specific and context-driven. *See*, *e.g.*, *Grant v. High Point Reg'l Health Sys.*, 645 S.E.2d 851, 853, 184 N.C. App. 250, 253 (N.C. Ct. App. 2007) ("The common law offense of obstructing public justice may take a variety of forms." (citation and quotation marks omitted)).

Here, Plaintiff has made various allegations that the Defendants individually made intentionally false and misrepresentative statements to investigating officers from the North Carolina State Bureau of Investigation (the "SBI") regarding the Decedent's death and the circumstances surrounding his death. *See*, *generally*, [Doc. No. 34] at ¶¶ 34, 74, 79-80, 84-85, 125-127. Plaintiff argues that the Defendants' statements support a claim for common law obstruction of justice.

Defendants seize on the argument that, even if they had made the alleged falsehoods to investigators, their misrepresentations did not prevent the Plaintiff from filing the instant suit, or otherwise prevent her from pursuing the estate's claims in this Court. *See* [Doc. No. 36] at pp. 19-21; [Doc. No. 39] at pp. 5-10. However, the Court is not persuaded by such arguments. As the Fourth Circuit has observed, North Carolina's cause of action for "obstruction of justice" not only seeks to remedy *actual* and *successful* acts of nefarious obstruction, but it also remedies *attempts* to "prevent, obstruct, impede, or hinder justice." *See Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 928 (4th Cir. 2007) (collecting cases). Here, even if the Defendants' alleged false statements were unsuccessful in preventing the Plaintiff from pursuing the estate's claims, it is their alleged *attempt* to prevent her from doing so that is controlling.

Moreover, the *Reed* court relied on North Carolina's criminal obstruction of justice statutes to reach its holding in that case. *See Reed*, 241 Fed. App'x at 30-31 (citing N.C. Gen. Stat. § 14-226 for support in finding that it is the "acts or attempted acts of the alleged obstructor, rather than the reaction of the victim," that govern the viability of a common law "obstruction of justice" claim). Following *Reed*, the Court notes that North Carolina criminally penalizes an individual for "obstruction of justice" where such person

> willfully make[s] or cause[s] to be made to a law enforcement agency or officer any false, deliberately misleading or unfounded report, for the purpose of interfering with the operation of a law enforcement agency, or to hinder or obstruct any law enforcement officer in the performance of his duty . . . .

*See* N.C. Gen. Stat. § 14-225(a). Here, Plaintiff alleges that Defendants Howell and Hopkins made intentionally misleading and false statements to the SBI during the immediate aftermath of Defendant Hopkins' encounter with the Decedent. *See* [Doc. No. 34] at ¶¶ 34, 74, 79-80, 84-85, 125-127. Plaintiff further alleges that these false statements were made for the purpose of impeding the SBI's investigation and Plaintiff's ability to pursue any civil claims. *Id.* at ¶¶ 34, 74, 79-80, 84-85, 125-127. Such acts, if proven, would seem to fall within North Carolina's obstruction of justice statute, and would seemingly support the Plaintiff's claim.

Nevertheless, the Court is constrained by controlling Fourth Circuit case law to dismiss Plaintiff's obstruction of justice claims against the Defendants. In *Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012), the Fourth Circuit was presented with a case in which it was alleged that certain police officers had fabricated evidence, tampered with evidence, and manipulated witnesses during the course of a criminal investigation. *See Evans*, 703 F.3d at 657-58. As a result of the officers' alleged transgressions, plaintiffs brought suit and asserted, *inter alia*, claims for state common-law obstruction of justice. *Id.* at 658. The district court held that, under such facts, the plaintiffs had stated viable claims for obstruction of justice because "it could not 'rule out the

possibility that a claim could exist for common law obstruction of justice for [the] creation of false evidence or destruction of evidence for the purpose of impeding the justice system, even if the conduct occurred as part of a criminal investigation.'" *Evans*, 703 F.3d at 658 (quoting *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 975 (M.D.N.C. 2011)). On appeal, the Fourth Circuit disagreed with the district court and reversed.

In reversing the district court, the Fourth Circuit held, succinctly, as follows:

> Even though North Carolina courts have interpreted common-law obstruction of justice to include fabrication of evidence and destruction of evidence, we have not found—and plaintiffs have not offered—any case from any jurisdiction recognizing a common-law obstruction of justice claim against a police officer for his actions relating to a criminal proceeding. Thus, in forecasting whether North Carolina would recognize such an action, we must conclude that although such a holding may be a remote "possibility," it is not a reality.

*Evans*, 703 F.3d at 658 (internal citations omitted). In a later case, the Fourth Circuit noted that "an utter dearth" of North Carolina cases have interpreted the "obstruction of justice" claim since *Evans*, and none had changed its essential holding as it relates to this issue. *See Massey v. Ojaniit*, 759 F.3d 343, 358 (4th Cir. 2014). Plaintiff has directed this Court to no cases altering the *Evans* court's determination. Finding no materially distinguishable facts between this matter and *Evans*, the Court finds that the alleged false statements were made by the officer Defendants during the course of an official police investigation, and therefore, the Court is bound to apply *Evans* to the Plaintiff's state law claims for obstruction of justice.

Accordingly, the Court **GRANTS** the motions to dismiss with respect to the Second Amended Complaint's state law obstruction of justice claims against Defendants Howell and Hopkins.

### IV. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1) Defendant Howell's Motion to Dismiss (Doc. No. 35) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

(2) Defendant Hopkins' Motion to Dismiss (Partial) (Doc. No. 38) is **GRANTED**; and

(3) This matter will proceed on the remaining claims contained in the Plaintiff's Second Amended Complaint (Doc. No. 34).

**SO ORDERED**.

Signed: April 21, 2016

*[Signature]*

Richard L. Voorhees
United States District Judge